UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LELIAMAE C.

                                            Plaintiff,

              v.

ANDREW M. SAUL,[1] Commissioner of
Social Security,

                                            Defendant.

_____

**DECISION
and
ORDER**

**19-CV-1112-LGF
(consent)**

APPEARANCES:          LAW OFFICES OF KENNETH R. HILLER
                      Attorneys for Plaintiff
                      ANTHONY ROONEY, of Counsel
                      6000 Bailey Avenue
                      Suite 1A
                      Amherst, New York 14226

                      JAMES P. KENNEDY, JR.
                      Attorney for Defendant
                      Federal Centre
                      138 Delaware Avenue
                      Buffalo, New York 14202;

                      JASON PARKERSON PECK
                      Social Security Administration
                      Office of the General Counsel
                      26 Federal Plaza, Room 3904
                      New York, New York 10278

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and pursuant to Rule 25(d) of the Federal Rules of Civil Procedure is automatically substituted as the defendant in this suit with no further action required to continue the action.

**JURISDICTION**

On October 14, 2020, this case was reassigned to the undersigned before whom the parties consented pursuant to 28 U.S.C. § 636(c) to proceed in accordance with this Court's June 29, 2018 Standing Order.  (Dkt. No. 14).  The court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).  The matter is presently before the court on motions for judgment on the pleadings, filed on March 13, 2020, by Plaintiff (Dkt. No. 11), and on May 13, 2020, by Defendant (Dkt. No. 12).

**BACKGROUND and FACTS**

Plaintiff Leliamae C. ("Plaintiff"), brings this action pursuant to the Social Security Act ("the Act"), seeking review of the Commissioner of Social Security ("the Commissioner" or "Defendant") decision denying her applications for Supplemental Security Income ("SSI") benefits under Title II of the Act and Disability Insurance benefits under Title XVI of the Act ("disability benefits").  Plaintiff, born on August 24, 1963 (R. 290), and was fifty-four years old the date of the administrative hearing. Plaintiff alleges that she became disabled on December 2, 2013, when she stopped working because of degenerative disc disease of the lumbar and cervical spine, bilateral shoulder osteoarthritis, left knee joint disease, type II diabetes, obesity, carpal tunnel syndrome, sleep apnea, and hypertension.  (R. 86).

Plaintiff's application for disability benefits was initially denied by Defendant on September 2, 2015 (R. 140), and, pursuant to Plaintiff's request, an initial hearing was held before Administrative Law Judge Brice Baird ("ALJ" or "Judge Baird"), on

2

December 19, 2017, in Buffalo, New York, at which Plaintiff, represented by Shreya Tripathi Bhardwaj, Esq. ("Ms. Bhardwaj"), appeared and testified.  (R. 82-125). Vocational Expert Christine DiTrinco ("the VE" or "VE DiTrinco"), also appeared and testified.  (R. 125-139).  The ALJ's decision denying Plaintiff's claim was rendered on July 23, 2018.  (R. 9-31).  Plaintiff requested review by the Appeals Council, and on June 25, 2019, the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review.  (R. 1-5).  This action followed on August 22, 2019, with Plaintiff alleging that the ALJ erred by failing to find her disabled.  (Dkt. No. 1).

On March 13, 2020, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Dkt. No. 11-1) ("Plaintiff's Memorandum").  Defendant filed, on May 13, 2020, Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Dkt. No. 12-1) ("Defendant's Memorandum").  On June 3, 2020, Plaintiff filed a reply to Defendant's memorandum ("Plaintiff's Reply").  (Dkt. No. 13).  Oral argument was deemed unnecessary.

On October 21, 2015, Dr. Rafeh Naqash, M.D. ("Dr. Naqash"), completed a medical source statement on Plaintiff, evaluated Plaintiff with limitations to standing and walking three hours in an eight-hour day, sitting five hours in an eight-hour workday, rare exposure to twisting, stooping, crouching, climbing ladders and stairs, lifting less than ten pounds, significant limitations to reaching, handling, fingering, no capacity to performing low stress jobs, and opined that Plaintiff would likely miss more than four days of work each month.  (R. 714-16).

On August 16, 2016, Physical Therapist Brett A. Moran ("P.T. Moran"),
completed a performance assessment on Plaintiff, noted that Plaintiff had limitations to
frequent static sitting, occasional standing, bending, squatting, kneeling, forward
reaching, overhead reaching, walking, climbing stairs, crawling, twisting, repetitive
bending, pushing and pulling, carrying objects with her hands, handle ten pounds
occasionally and was able to perform sedentary work.  (R. 385).

On March 31, 2018, Dr. Nikita Dave, M.D. ("Dr. Dave"), completed a consultative
orthopedic examination on Plaintiff, evaluated Plaintiff with normal gait and station, the
ability to rise from a chair without difficulty, full extension and flexion of Plaintiff's cervical
and lumbar spines, intact hand and finger dexterity, full range of motion ("ROM") of
elbows, forearms, wrists, hips, ankles, knees, no limitations to fine motor hand skills,
mild limitations to repetitive gross motor manipulation of the left hand, repetitive twisting,
lifting, carrying, pushing and pulling heavy objects and prolonged sitting, intermittent
moderate limitations to prolonged standing, walking, climbing, squatting, moderate
limitations to squatting and stair climbing, and that Plaintiff may benefit from frequent
rest intervals, and alternating positions between standing and walking.  (R. 1538-44).

## DISCUSSION

1.    **Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability
benefits when she is unable "to engage in any substantial gainful activity by reason of
any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has instructed . . . that the factual findings of the Secretary,[2] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

## 2.    Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable

---

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a

residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  If the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, or if the defendant fails to meet its burden at the fifth step, the inquiry ceases and the claimant is eligible for disability benefits.  *Id.*

In this case, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease of the lumbar and cervical spines, bilateral shoulder arthritis, left knee degenerative joint disease, right arm carpal tunnel syndrome, and obesity, and that Plaintiff's sleep apnea, asthma, hypertension, high cholesterol, varicose veins, Type II diabetes, headaches and left leg edema are not severe.  (R. 15).  The ALJ further determined that Plaintiff's impairments do not meet or medically equal a listed impairment (R. 16), and that Plaintiff had the RFC to perform sedentary work with limitations to lifting and carrying 10 pounds occasionally and five pounds frequently, sitting up to six hours in and eight-hour workday, standing or walking up to two hours in an eight-hour workday, occasional climbing ramps or stairs, but no climbing ladders, ropes or scaffolds, frequent handling of objects on the right side, frequent fingering of objects bilaterally, no exposure to excessive vibration, exposure to hazardous like moving machinery and unprotected heights.  (R. 17).  Plaintiff does not contest the

7

ALJ's findings at steps one through three of the disability review process but contends that the ALJ erred in evaluating Plaintiff's residual functional capacity assessment and skills related to Plaintiff's past relevant work.

## A.  Residual functional capacity

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv), and prove that substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training.  *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).  To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities.  *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities."  *Id*.

The Second Circuit requires that all complaints . . . must be considered together in determining . . . work capacity.  *DeLeon v. Secretary of Health and Human Services,* 734 F.2d 930, 937 (2d Cir. 1984).  Once an ALJ finds a disability claimant does not

have a severe medically determinable physical or mental impairment, 20 C.F.R. § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform past work, 20 C.F.R. § § 404.1520(a)(4)(iv), and to prove substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker*, 626 F.2d 225 at 231. It is improper to determine a claimant's residual work capacity based solely upon an evaluation of the severity of the claimant's individual complaints. G*old v. Secretary of Health and Human Services*, 463 F.2d 38, 42 (2d Cir. 1972). To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id.* at 294.

An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294. In addition, the Commissioner must establish that the claimant's skills are transferrable to the new employment if the claimant was employed in a "semi-skilled" or "skilled" job. *Id.* at 294.

This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy.  *Id.* at 296.

In this case, the ALJ found that Plaintiff had the residual functional capacity to perform sedentary[3] work with limitations to lifting and carrying 10 pounds occasionally and five pounds frequently, sitting up to six hours in and eight-hour workday, standing or walking up to two hours in an eight-hour workday, occasional climbing ramps or stairs, but no climbing ladders, ropes or scaffolds, frequent handling of objects on the right side, frequent fingering of objects bilaterally, no exposure to excessive vibration, exposure to hazardous like moving machinery and unprotected heights.  (R. 17). Plaintiff contends that the ALJ's residual functional capacity assessment of Plaintiff is erroneous because the ALJ improperly afforded little weight to the opinion of Plaintiff's treating physician Dr. Naqash, afforded great weight to the findings of P.T. Moran without including P.T. Moran's finding that Plaintiff had an occasional limitation to reaching in the ALJ's RFC assessment, failed to discuss Dr. Dave's finding that Plaintiff would require frequent breaks at work, and erred in evaluating transferable skills obtained in Plaintiff's previous work.  Plaintiff's Memorandum at 14-27.  Defendant maintains that the ALJ provided sufficient reasons for affording weight to the opinions of Drs. Naqash and Dave, included P.T. Moran's finding on Plaintiff's ability to reach, and properly relied on the VE's testimony regarding skills transferable from Plaintiff's past

---

[3]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

relevant work.  Defendant's Memorandum at 6-15.  Plaintiff's motion on this issue is without merit.

The so-called residual functional capacity or RFC, is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A "'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR[4] 96-8p; 1996 WL 374184, at *1.  In making an RFC assessment, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on those facts, along with the claimant's subjective symptoms of pain and other asserted limitations.  20 C.F.R. §§ 404.1545, 416.945.  The "RFC is not the *least* an individual can do despite his or her limitations, but the *most*."  SSR 96-8p; 1996 WL 374184, at * 1 (italics in original).  "The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms."  *Id.*  If there is "no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity."  *Id.*  "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . .  Only after that may the RFC be expressed in terms of the exertional levels of work,

---

[4] "SSR" is the acronym for "Social Security Rulings" which are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. Such rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted."  20 C.F.R. § 402.35(b)(1).

sedentary, light, medium, heavy, and very heavy." *Id.* Although the RFC assessment is reserved for the commissioner, the assessment remains a medical determination that must be based on medical evidence of record, such that the ALJ may not substitute his or her own judgment for competent medical opinion. *Walker v. Astrue*, 2010 WL 2629832, at * 6 (W.D.N.Y. June 11, 2010) (citing 20 C.F.R. §§ 404.1527(e)(2), and 416.927(e)(2)), *report and recommendation adopted*, 2010 WL 2629821 (W.D.N.Y. June 28, 2010). The Second Circuit has upheld an RFC assessment where the ALJ discounted the claimant's only treating physician's medical source statement without remanding for acquisition of another medical source statement where there was sufficient evidence in the record to permit the ALJ to assess the RFC, including years of treatment notes and evidence of the claimant's social and recreational activities. *See Monroe v. Comm'r of Soc. Sec.*, 676 Fed. Appx. 5, 6-9 (2d Cir. Jan. 18, 2017). Moreover, where substantial evidence in the record supports the ALJ's RFC assessment, there is no "gap" in the medical record requiring the ALJ to further develop the record by obtaining an additional medical source statement from one of Plaintiff's treating physicians. *See Pellam v. Astrue*, 508 Fed. Appx. 87, 90 (2d Cir. Jan. 28, 2013) (citing *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) ("where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information. . . .")).

The burden to demonstrate functional limitations is on the Plaintiff. *See Reynolds v. Commissioner of Social Security*, 2019 WL 2020999, at *4 (W.D.N.Y. May 8, 2019). ALJs, however, must always give good reasons for assigning weight to

medical source opinions.  *See Cunningham v. Colvin*, 2014 WL 6609497, at *6 (W.D.N.Y. Nov. 20, 2014) (ALJ must always give good reasons for the weight afforded to a medical source opinion).

**Treating physician rule**

As relevant, 20 C.F.R. § 416.927(f)(1) provides

 . . .. opinion[s] from a medical source who is not an acceptable medical source or from a nonmedical source may outweigh the opinion of an acceptable medical source, including the opinion of a treating source.  For example, it may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole.

20 C.F.R. § 416.927(f)(1).

The treating physician rule applies to disability claims filed before March 27, 2017, and, as a result, applies to Plaintiff's claim filed on July 30, 2015.  *See* 20 C.F.R. § 404.1527.  The Act requires ALJs to grant significant weight to treating physician opinions supported by medical evidence in the record, and requires treating physician opinions be granted "controlling weight" when the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record."  20 C.F.R. § 404.1527(d)(2).  Treating physician opinions are not determinative, and granted controlling weight only when they are not inconsistent with other controlling evidence, 20 C.F.R. § 404.1527(d); *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004) (citing *Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir. 2002)).

In this case, the ALJ properly afforded little weight to Dr. Naqash's opinion that Plaintiff had limitations to sitting for three hours and standing for five hours in an eight-hour workday, required a sit-stand option at work, was able to lift and carry less than 10 pounds, had limitations to reaching, fingering and handling, was unable to engage in low stress work, and was likely to miss more than four days of work each month.  (R. 714-16).  In affording less weight to Dr. Naqash's findings,  ALJ determined that although Dr. Naqash was Plaintiff's treating provider, the findings set forth in Dr. Naqash's medical source statement on were inconsistent with Plaintiff's conservative treatment, and consistent evaluations of lack of motor deficit, normal gait and strength, full range of motion, intact dexterity and grip strength (R. 22 referencing 1543-44), a determination sufficient under 20 C.F.R. § § 404.1527(d)(2), to provide the Plaintiff and this court with the ALJ's underlying reasons for affording less weight to Dr. Naqash's opinion.  *See Cunningham,* 2014 WL 6609497, at *6.  Plaintiff's motion on this issue is therefore without merit and DENIED.

Plaintiff's similar argument, Plaintiff's Memorandum at 18-20, that the ALJ erred by generally affording great weight to P.T. Moran's findings yet excluding the portion of P.T. Moran's finding that Plaintiff had a limitation to occasional reaching is also without merit.  In this case, the ALJ afforded great weight to Dr. Dave's March 31, 2018, physical examination of Plaintiff that found Plaintiff had mild limitations to repetitive gross motor motion of the left hand and no limitation to Plaintiff's ability to reach.  (R. 1543).  As indicated in the foregoing, Discussion, *supra*, at 12-13, ALJ's are not required to accept every aspect of medical opinions.  Plaintiff's motion on this issue is

therefore DENIED.  *Vein,* 312 F.3d 578 at 588 (it is within the province of the ALJ to resolve evidentiary conflicts).

Plaintiff's further allegation that the ALJ "cherry-picked" Dr. Dave's opinion by affording great weight to Dr. Dave's opinion generally while at the same time finding Dr. Dave's opinion Plaintiff would require frequent rest breaks without support of substantial evidence is also without merit.

In this case, on March 31, 2018, Dr. Dave completed an orthopedic consultative examination on Plaintiff and evaluated Plaintiff with normal gait and station, the ability to rise from a chair without difficulty, full extension and flexion of the cervical and lumbar spines, intact hand and finger dexterity, full range of motion ("ROM") of the elbows, forearms, wrists, hips, ankles, knees, normal fine motor hand skills, mild limitations to repetitive gross motor manipulation of the left hand, repetitive twisting, lifting, carrying, pushing, and pulling heavy objects and prolonged sitting, intermittent moderate limitations to prolonged standing, walking, climbing, squatting, moderate limitations to squatting and climbing stairs, opined that Plaintiff may benefit from frequent rest intervals, and alternating positions between standing and walking.  (R. 1538-44).  Upon finding Dr. Dave's consultative opinion "generally consistent with the record as a whole, including the claimant's often-noted lack of distress, normal gait, normal strength, and conservative treatment history" (R. 22), the ALJ then afforded little weight to the portion of Dr. Dave's opinion finding that Plaintiff required frequent rest breaks, deeming that portion of Dr. Dave's opinion inconsistent with the record as a whole, Plaintiff's physical examinations, conservative treatment history, normal gait with no documented use of a

cane, 5/5 extremity strength, and reported ability to stand for 30 minutes at a time.  (R. 24-25).

"Although ALJ's conclusion[s] may not perfectly correspond with any of the opinions of medical sources cited in [his or her] decision, [ALJs are] entitled to weigh all of the evidence available to make an RFC finding [] consistent with the record as a whole" *Matta v. Astrue,* 508 Fed. App'x. 53, 56 (2d Cir. 2013) (bracketed material added), and are not required to accept every aspect of a medical source opinion, a near impossibility in a record that contains multiple partly conflicting opinions.  *See Barry v. Colvin*, 606 Fed. App'x. 621, 624 (2d Cir. 2015) (no error where ALJ discounted a portion of a consultative examiner's opinion that was inconsistent with other record evidence).  As such, no error results from the ALJ's decision to afford only partial weight to Dr. Dave's finding that Plaintiff may require frequent rest breaks.  The Plaintiff's motion on this issue is therefore without merit and DENIED.

Plaintiff's allegation that the ALJ improperly relied on the VE's testimony that Plaintiff had transferable computer, data entry, general office, and clerical skills, without specifying the skills necessary for performing the jobs the VE testified that Plaintiff was capable of performing (receptionist, order clerk, and data examination clerk), is also without merit.  In this case, the VE testified that Plaintiff's past relevant work included the jobs of cleaner, housekeeper, data entry operator or data entry clerk (R. 127).  Upon questioning by the ALJ, the VE testified to the skills that would be transferable from Plaintiff's past relevant work:

Q: Now, you indicated that the claimant's past work of data entry was a semi-skilled job with an SVP-

16

A: Correct.

Q: - - of 4. Were there any skills that were acquired in that position?

A: And I certainly would say so, though it would be specific to, you know, having computer skills, obviously data entry skills and ability to just general office skills and clerical tasks.

Q: With respect to the hypothetical individual identified in hypothetical number 2, are there jobs that that hypothetical individual could perform at a category of 4 or less that would utilize the skills you mentioned?

A: And keeping with those restrictions?

Q: Yes.

A: Yeah, just bear with me here and let me just take a look.  And the range that I'm considering is - - would you just tell me that please?  That helps with vocational information.

Q: The age range would be 50 to 54.

A: Okay, perfect, thank you. Just give me one minute here, if you don't mind?

Q: Sure.

A: All right, I'm just going to take them one at a time, if you don't mind, just so I can kind of confirm as I go?

Q: Okay.

A: The first one, though, again utilizing - - again, there's price[5] skills within that second RFC, the first title being a receptionist, DOT number 237.367-038, SVP

---

[5] Although the term  "price skills" as that term appears in the VE's testimony is not defined in the record, based on the context of the VE's response, lack of a more precise definition appears unrelated to the

4, semi-skilled, sedentary, and the national estimation employing full-time in that

single title, 96, 921 . . . secondly is an order clerk, DOT number . . . 249.362-026,

SVP 4 semi-skilled, sedentary and the national estimation employing full-time in

that single title, 64, 129 . . . thirdly, is data examination clerk, DOT number

209.387-022, SVP 3, semi-skilled, sedentary . . .

Q: With respect to the jobs that you just identified, <u>are</u> <u>there</u> <u>any</u> <u>additional</u> <u>skills</u>

<u>that</u> <u>would</u> <u>have</u> <u>to</u> <u>be</u> <u>learned</u> <u>to</u> <u>be</u> <u>able</u> <u>to</u> <u>perform</u> <u>these</u> <u>jobs?</u>

A: <u>In</u> <u>my</u> <u>opinion</u> <u>no,</u> Your Honor.  You know, even though it's still, you know, the

50 to 54 category in my consideration of vocational adjustment, those three titles

have a – <u>they</u> <u>already</u> <u>match</u> in terms of the work fields, the materials product

and industry and the past data entry job, so I would expect for it to take no

vocational adjustment.

(R. 131-32) (emphasis added).

As indicated by the preceding, the VE testified that the skills obtained in Plaintiff's

past relevant work as a data entry operator (computer skills, data entry skills, general

office and clerical skills), were directly transferable to the jobs the VE found Plaintiff was

capable of performing in the national economy (receptionist, order clerk, and data

examination clerk), including the restrictions posed by the ALJ.  *Id.*  Nothing more was

required to support the ALJ's finding that Plaintiff was not disabled.  *See Decker,* 647

F.2d at 294; 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 202.03 (an individual who

is advanced age, has a limited or less education, and has past skilled or semi-skilled

---

VE's opinion that Plaintiff's PRW skills are transferable to Plaintiff's capacity for semi-skilled, sedentary work.

work with transferable skills is not disabled).  Accordingly, Plaintiff's motion on this issue is DENIED.

## CONCLUSION

Based on the foregoing, Plaintiff's motion (Doc. No. 11) is DENIED; Defendant's motion (Doc. No. 12) is GRANTED.  The Clerk of the Court is directed to close the file. SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:        March 22, 2021
              Buffalo, New York